McKinney, J.,
delivered the opinion of the Court.
This was an action of replevin, for the recovery of three horses, claimed to be the property of Brown, and *608 alleged to have been forcibly taken from Ms possession. Verdict and judgment for the defendant.
The facts are these: On the 4th of June, 1857, a contract was completed between the plaintiff, Brown, and one Walter Parker; by which, for the alleged consideration of five hundred dollars, Brown sold and conveyed to Parker a lot of ground in the vicinity of Shelbyville, containing about two acres — the deed for which, (executed and delivered at the time of the contract,) contains covenants of seizin, lawful right to convey — that the lot was unencumbered, and of general warranty. The consideration for the lot given by Parker, • as the record shows, was three horses, which were delivered by him to Brown at the time of the contract; leaving a balance of $75 due from Parker for the lot, and a horse received by him from Brown at the same time, for which balance Parker executed and delivered his note to Brown.
It seems that Brown had no title to the lot. He represented, truly, to Parker, that he had made a verbal purchase of the lot from one Dudley, but had received from hi.m neither deed nor bond for title; but he further falsely represented that he had paid all the consideration to Dudley, except $75. Upon this representation of the state of the facts by Brown, Parker, believing it to be true, agreed to complete the contract, and to accept Brown’s deed, with the proper covenants, and rely, for his indemnity in regard to the title, upon the covenant in Brown’s deed to him.
In the course of a few weeks after the contract, on ascertaining that, in fact, no part of the consideration money had been paid by Brown to Dudley for the lot, *609 and assuming that by this fraudulent representation on the part of Brown, the contract was -vitiated abinitio, Parker, as it would seem, from the proof, resolved to abandon the contract, and reclaim the horses given by him to Brown for the lot; and, accordingly, about the 10th of July, 1857, in the night, the stable door of Brown was broken open, the horses taken off, and early the next morning, before breakfast time, Parker took the horses to the house of defendant, Wood (who is his father-in-law,) and made some sort of a colorable transfer or sale of said horses to the defendant. Parker, however, gave no intimation to Brown, of an intention, on his part, to avoid the contract, or to reclaim his property. Neither did he give back, or offer to give back, the horse received by him from Brown, in the contract between them; nor did he demand the surrender of his note for $75, given to Brown. But, simply by force, re-captured the horses, and placed them in possession of Wood, who, from all the evidence, we assume, had full knowledge of all the facts, and must, therefore, be considered as standing in the shoes of Parker, as regards tbe determination of this case.
Upon the foregoing facts, the question to be determined, is, did the title to the horses sued for, vest in Brown, and continue in him, so as to entitle him to maintain the present action; or, was the contract put an end to, and his title defeated, by the recaption of the horses by Parker, under the circumstances before stated ?
It cannot be doubted, that, in the absence of fraud, the contract between Brown and Parker was a valid one, binding one or both parties. Parker had full *610 knowledge that Brpwn had no title to the lot; and knowing this fact, he prudently exacted from Brown covenants in the deed from him amply sufficient for his indemnity. The covenants included the want or defect of title; and in such case, the .law presumes that the covenants were expressly taken for the protection of the purchaser, against the defect or want of title: Raule on Covenants, (ed. of 1852,) 566, 122 to 128.
The purchaser cannot, in such a case, refuse to pay the purchase money; nor can the vendor, in a suit against him on his covenant, avail himself of the purchaser’s knowledge of the defect of title. The knowledge of the latter cannot destroy the legal effect of the vendor’s covenant: Ib., 124-5. Such evidence of knowledge on the part of the purchaser has been excluded in some of the cases, on the grounds, first, because the issue of notice or knowledge is an immaterial one; and, secondly, because it infringes the rule that parol evidence shall not be admitted to control or contradict the effect of a written instrument: Ib., 15; Pick., 70; 8 Mass., 146.
But it is clear, that, on the ground of the false and fraudulent representation of Brown, in respect to the payment of the purchase money of the lot to Dudley, Parker might have come into a Court of Equity for a rescisión of the contract in Mo; but then he must have restored the horse received by bim from Brown.-
It might be conceded, too, perhaps, that without the interposition of a Court of Equity, Parker, on discovery of the fraud, might' have put an end to the contract, by offering to cancel the deed, restore the horse' to Brown, and. demanding his property .and a rescission *611 of the contract. And if this had been done, it maybe that Parker might have recaptured the horses ; provided this could have been done peaceably, and without a trespass upon the premises of Brown: 9 Hum., 689.
But, it is clear, that Parker could not hold on to the contract in part, and abandon or rescind it in part. And, inasmuch as the title to the horses passed to Brown, though subject to be defeated, at the election of Parker, because of the fraud; yet, as nothing was done by which, in law, would be effectual to put an end to the contract, the consequence is, that Brown must still be regarded as having a legal, though de-feasible, title to the- horses sued for in this action.
The jury having been instructed differently, the judgment is erroneous, and must be reversed.
Judgment reversed.